## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

THOMAS ORVILLE MOORE, JR.,

               Plaintiff,

v.

ORIGEN FINANCIAL SERVICES
LLC,

               Defendant.

**Case No.: 2:25-cv-12848**

**COMPLAINT AND JURY TRIAL
DEMAND**

## COMPLAINT

Thomas Orville Moore, Jr. ("Plaintiff" or "Mr. Moore") by and through his
counsel brings the following Complaint against Origen Financial Services LLC
("Defendant" or "Origen") for violations of the federal Fair Credit Reporting Act
("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a background check report that
Defendant published to Plaintiff's landlord, which falsely portrayed Plaintiff as a
convicted felon.

## INTRODUCTION

1.     This is an individual action for damages, costs, and attorney's fees
brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§
1681, *et seq.* ("FCRA").

2.     Defendant is a consumer reporting agency ("CRA") that compiles and

1

maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these consumer reports to mortgage brokers, landlords, property owners, and property management companies who use the reports to make decisions regarding prospective buyers, borrowers and tenants.

3.      Defendant assembled and published an inaccurate consumer report to Plaintiff's landlord, which included three felony convictions and three misdemeanor convictions.

4.      The records reported by Defendant *do not* belong to Plaintiff, rather they belong to a distinctive consumer with absolutely no relation to Plaintiff.

5.      Plaintiff's prospective landlord denied his application to purchase the mobile home after receiving a consumer report from Defendant that inaccurately attributed multiple serious criminal records to Plaintiff. The denial was based entirely on the erroneous information in the report, which falsely identified Plaintiff as the individual convicted of multiple felonies and misdemeanors—including domestic assault and weapons-related charges—that Plaintiff has never committed.

6.      Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available public court criminal records from Clay County District Court and Kandiyohi County District Court, prior to publishing the information to Plaintiff's landlord.

7.     Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

8.     Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their landlords and property owners with inaccurate and stigmatizing information.

9.     Defendant's inaccurate report cost Plaintiff the opportunity to purchase his desired mobile home, and even deprived him of the ability to rent the trailer that was suitably accommodating his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

10.     As a result of Defendant's violations of the Fair Credit Reporting Act, Plaintiff has suffered a wide range of actual damages, including but not limited to: the loss of valuable housing opportunities; the expenditure of significant time, labor, and financial resources attempting to correct the inaccurate consumer report; reputational harm; and severe emotional distress. Plaintiff's emotional suffering has manifested in persistent psychological symptoms such as anxiety, fear, humiliation, frustration, and mental anguish. These psychological injuries, in turn, gave rise to physical symptoms, including insomnia, nausea, loss of appetite, chronic fatigue,

and general weakness—each of which has interfered with Plaintiff's daily functioning and diminished his quality of life. Plaintiff also experienced a profound loss of enjoyment of life and continued emotional and physical strain as a result of Defendant's reckless misreporting.

11.     As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

12.     Thomas Orville Moore, Jr. ("Plaintiff" or "Mr. Moore") is a natural person residing in Georgetown, Delaware, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

13.     Defendant Origen Financial Services LLC ("Defendant" or "Origen") is a corporation doing business throughout the United States, including the State of Delaware and in this District, and has a principal place of business located 27777 Franklin Road, Suite 1570, Southfield, Michigan 48034. Defendant can be served through its registered agent, CSC-Lawyers Incorporating Service, at 3410 Belle Chase Way, Ste 600, Lansing, MI 48911.

14.     Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f).

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## FACTS

**Plaintiff Decides to Purchase the Trailer from Sussex East MHC**

17.     In May 2025, while residing in the home formerly owned by Plaintiff's late mother—which was subject to a reverse mortgage and due to be repossessed—Plaintiff and his fiancé applied to purchase a trailer home at Sussex East MHC, a manufactured home community located in Lewes, Delaware. The couple found the trailer to be well-suited to their needs in terms of affordability, safety, and proximity to work, and viewed it as an ideal long-term housing solution offering stability and peace of mind.

18.     Sussex East MHC offered to sell the trailer at a price well within Plaintiff and his fiancé's budget, and the couple was on track to finalize the purchase. The only remaining step was the completion of a background check by the property's landowner. Had Plaintiff and his fiancé passed the screening—as they reasonably expected—they would have secured ownership of the trailer and converted their

rental into a permanent home.

**Defendant Published an Inaccurate Consumer Report to Sussex East MHC**

19.     RHP Properties, a property management company to Sussex East MHC contracted with Defendant to conduct a background check on Plaintiff.

20.     On or about May 22, 2025, Defendant sold a consumer report about Plaintiff to RHP Properties.

21.     Within that consumer report, Defendant published inaccurate information about Plaintiff.

22.     Specifically, the "Criminal and Public Record Report" section of the consumer report included the following criminal records from Clay County and Kandiyohi County, Minnesota:



**State: MN**

Court Jurisdiction: MN BUREAU OF CRIMINAL APPREHENSION

| | |
|---|---|
| **Case Number:** | 19020622 |
| **Case Type:** | FELONY |
| **Category:** | CRIMINAL |
| **Court Name:** | CLAY COUNTY DISTRICT COURT |
| **Court Type:** | CRIMINAL |

**Court Location**

| | |
|---|---|
| **Area Short Name:** | Clay |
| **Fips Code:** | 27027 |
| **Fips Display:** | MN-Clay (27027) |
| **State Code:** | MN |

**Offenses**

| | |
|---|---|
| **Arresting Agency:** | MN0140400 - MOORHEAD POLICE DEPT |
| **Category:** | CRIMINAL |
| **Counts:** | 1 |
| **County Or Jurisdiction:** | CLAY COUNTY |
| **Offense Code:** | 629.75.2(D)(1) - VIOLATE NO CONTACT ORDER - WITHIN 10 YEARS OF THE FIRST OF TWO OR MORE CONVICTIONS |
| **Offense Date:** | |
| **Offense Description:** | VIOLATE NO CONTACT ORDER - WITHIN 10 YEARS OF THE FIRST OF TWO OR MORE CONVICTIONS |
| **Disposition:** | CONV-310-CONVICTED |
| **Disposition Date:** | 11-13-2019 |
| **Sentence:** | 00021000 |
| **Severity:** | FELONY |
| **Statute:** | 629.75.2(d)(1) |



COURT FILE NUMBER: 14CR192674

Background Report

**Sentencing**

| | |
|---|---|
| Amount: | 000 years 21 months 000 days |
| Date: | 11-13-2019 |
| Sentence Category: | Commitment |
| Sentence Status: | Completed |
| Amount: | 1000.00 |
| Date: | 11-13-2019 |
| Sentence Category: | Fine |
| Sentence Status: | NotProvided |
| Amount: | 005 years 00 months 000 days |
| Date: | 11-13-2019 |
| Sentence Category: | Probation |
| Sentence Status: | Completed |

**Disclaimer**

This report is furnished to you pursuant to the Agreement for Service between the parties and in compliance with the Fair Credit Reporting Act. This report is furnished based upon your certification that you have a permissible purpose to obtain the report. The information contained herein was obtained in good faith from sources deemed reliable, but the completeness or accuracy is not guaranteed.

| State: MN | Court Jurisdiction: MN BUREAU OF CRIMINAL APPREHENSION |
|---|---|

| | |
|---|---|
| Case Number: | 19017110 |
| Case Type: | MISDEMEANOR |
| Category: | CRIMINAL |
| Court Name: | CLAY COUNTY DISTRICT COURT |
| Court Type: | CRIMINAL |

## Court Location

| | |
|---|---|
| Area Short Name: | Clay |
| Fips Code: | 27027 |
| Fips Display: | MN-Clay (27027) |
| State Code: | MN |

## Offenses

| | |
|---|---|
| Arresting Agency: | MN0140400 - MOORHEAD POLICE DEPT |
| Category: | CRIMINAL |
| Counts: | 1 |
| County Or Jurisdiction: | CLAY COUNTY |
| Offense Code: | 609.2242.1(1) - DOMESTIC ASSAULT-MISDEMEANOR-COMMITS ACT TO CAUSE FEAR OF IMMEDIATE BODILY HARM OR DEATH |
| Offense Date: | |
| Offense Description: | DOMESTIC ASSAULT-MISDEMEANOR-COMMITS ACT TO CAUSE FEAR OF IMMEDIATE BODILY HARM OR DEATH |
| Disposition: | CONV-310-CONVICTED |
| Disposition Date: | 06-26-2019 |
| Sentence: | 00000090 |
| Severity: | MISDEMEANOR |
| Statute: | 609.2242.1(1) |



6/2/25, 3:36 PM                                    Background Report

COURT FILE NUMBER: 14CR192181

### Sentencing

| | |
|---|---|
| Amount: | 500.00 |
| Date: | 06-26-2019 |
| Sentence Category: | Fine |
| Sentence Status: | NotProvided |
| Amount: | 000 years 00 months 090 days |
| Date: | 06-26-2019 |
| Sentence Category: | Commitment |
| Sentence Status: | Completed |



| State: MN | | Court Jurisdiction: MN BUREAU OF CRIMINAL APPREHENSION |
|---|---|---|
| Case Number: | 17004970 | |
| Case Type: | FELONY | |
| Category: | CRIMINAL | |
| Court Name: | CLAY COUNTY DISTRICT COURT | |
| Court Type: | CRIMINAL | |

**Court Location**

| Area Short Name: | Clay |
|---|---|
| Fips Code: | 27027 |
| Fips Display: | MN-Clay (27027) |
| State Code: | MN |

**Offenses**

| Arresting Agency: | MN0140400 - MOORHEAD POLICE DEPT |
|---|---|
| Arrest Date: | 09-13-2017 |
| Category: | CRIMINAL |
| Conviction Location: | MN0140400 - Moorhead Police Dept |
| Counts: | 1 |
| County Or Jurisdiction: | CLAY COUNTY |
| Offense Code: | 609.222.1 - ASSAULT-2ND DEGREE-DANGEROUS WEAPON |
| Offense Date: | |
| Offense Description: | ASSAULT-2ND DEGREE-DANGEROUS WEAPON |
| Disposition: | CONV-310-CONVICTED |
| Disposition Date: | 09-13-2017 |
| Sentence: | 00023000 |
| Severity: | FELONY |
| Statute: | 609.222.1 |

6/2/25, 3:36 PM        Background Report

COURT FILE NUMBER: 14CR17623

**Sentencing**

| Amount: | 50 |
|---|---|
| Date: | 09-13-2017 |
| Sentence Category: | Fine |
| Sentence Status: | NotProvided |
| Amount: | 000 years 23 months 000 days |
| Date: | 09-13-2017 |
| Sentence Category: | Commitment |
| Sentence Status: | Completed |

**State: MN**

**Court Jurisdiction:** MN BUREAU OF CRIMINAL APPREHENSION

| | |
|---|---|
| **Case Number:** | 19015670 |
| **Case Type:** | MISDEMEANOR |
| **Category:** | CRIMINAL |
| **Court Name:** | CLAY COUNTY DISTRICT COURT |
| **Court Type:** | CRIMINAL |

## Court Location

| | |
|---|---|
| **Area Short Name:** | Clay |
| **Fips Code:** | 27027 |
| **Fips Display:** | MN-Clay (27027) |
| **State Code:** | MN |

## Offenses

6/2/25, 3:36 PM                                          Background Report

| | |
|---|---|
| **Arresting Agency:** | MN0140400 - MOORHEAD POLICE DEPT |
| **Category:** | CRIMINAL |
| **Counts:** | 1 |
| **County Or Jurisdiction:** | CLAY COUNTY |
| **Offense Code:** | 169A.20.1(1) - TRAFFIC - DWI - OPERATE MOTOR VEHICLE UNDER INFLUENCE OF ALCOHOL |
| **Offense Date:** | |
| **Offense Description:** | TRAFFIC - DWI - OPERATE MOTOR VEHICLE UNDER INFLUENCE OF ALCOHOL |
| **Disposition:** | CONV-310-CONVICTED |
| **Disposition Date:** | 05-24-2019 |
| **Sentence:** | 00000090 |
| **Severity:** | MISDEMEANOR |
| **Statute:** | 169A.20.1(1) |

## Comments

COURT FILE NUMBER: 14CR192018

## Sentencing

| | |
|---|---|
| **Amount:** | 000 years 00 months 090 days |
| **Date:** | 05-24-2019 |
| **Sentence Category:** | Commitment |
| **Sentence Status:** | Completed |
| **Amount:** | 002 years 00 months 000 days |
| **Date:** | 05-24-2019 |
| **Sentence Category:** | Probation |
| **Sentence Status:** | Completed |



| State: MN | | Court Jurisdiction: MN BUREAU OF CRIMINAL APPREHENSION |
|---|---|---|
| Case Number: | 17008775 | |
| Case Type: | MISDEMEANOR | |
| Category: | CRIMINAL | |
| Court Name: | KANDIYOHI COUNTY DISTRICT COURT | |
| Court Type: | CRIMINAL | |

**Court Location**

| Area Short Name: | Kandiyohi |
|---|---|
| Fips Code: | 27067 |
| Fips Display: | MN-Kandiyohi (27067) |
| State Code: | MN |

**Offenses**

| Arresting Agency: | MN0340000 - KANDIYOHI COUNTY SHERIFF |
|---|---|
| Category: | CRIMINAL |
| Counts: | 1 |
| County Or Jurisdiction: | KANDIYOHI COUNTY |
| Offense Code: | 609.72.1(1) - DISORDERLY CONDUCT-BRAWLING OR FIGHTING |
| Offense Date: | |
| Offense Description: | DISORDERLY CONDUCT-BRAWLING OR FIGHTING |
| Disposition: | CONV-310-CONVICTED |
| Disposition Date: | 08-29-2017 |
| Sentence: | 00000030 |
| Severity: | MISDEMEANOR |
| Statute: | 609.72.1(1) |

**Comments**

COURT FILE NUMBER: 34CR17706



6/2/25, 3:36 PM                                        Background Report

**Sentencing**

| Amount: | 50 |
|---|---|
| Date: | 08-29-2017 |
| Sentence Category: | Fine |
| Sentence Status: | NotProvided |
| Amount: | 000 years 00 months 030 days |
| Date: | 08-29-2017 |
| Sentence Category: | Commitment |
| Sentence Status: | Completed |



| State: MN | | Court Jurisdiction: MN BUREAU OF CRIMINAL APPREHENSION |
|---|---|---|
| Case Number: | 21027866 | |
| Case Type: | FELONY | |
| Category: | CRIMINAL | |
| Court Name: | CLAY COUNTY DISTRICT COURT | |
| Court Type: | CRIMINAL | |

**Court Location**

| Area Short Name: | Clay |
|---|---|
| Fips Code: | 27027 |
| Fips Display: | MN-Clay (27027) |
| State Code: | MN |

**Offenses**

| Arresting Agency: | MN0140400 - MOORHEAD POLICE DEPT |
|---|---|
| Category: | CRIMINAL |
| Counts: | 1 |
| County Or Jurisdiction: | CLAY COUNTY |
| Offense Code: | 629.75.2(D)(1) - VIOLATE NO CONTACT ORDER - WITHIN 10 YEARS OF THE FIRST OF TWO OR MORE CONVICTIONS |
| Offense Date: | |
| Offense Description: | VIOLATE NO CONTACT ORDER - WITHIN 10 YEARS OF THE FIRST OF TWO OR MORE CONVICTIONS |
| Disposition: | CONV-310-CONVICTED |
| Disposition Date: | 01-10-2022 |
| Sentence: | 00021000 |
| Severity: | FELONY |
| Statute: | 629.75.2(d)(1) |



6/2/25, 3:36 PM        Background Report

COURT FILE NUMBER: 14CR214048

**Sentencing**

| Amount: | 000 years 21 months 000 days |
|---|---|
| Date: | 01-10-2022 |
| Sentence Category: | Commitment |
| Sentence Status: | Completed |
| Amount: | 005 years 00 months 000 days |
| Date: | 01-10-2022 |
| Sentence Category: | Probation |
| Sentence Status: | Active |
| Amount: | 1000.00 |
| Date: | 01-10-2022 |
| Sentence Category: | Fine |
| Sentence Status: | NotProvided |

23. The criminal records reported by Defendant bore no connection whatsoever to Plaintiff's history or identity.

24. Plaintiff has never been arrested, charged with, or convicted of any of

12

the disturbing and deeply stigmatizing felony and misdemeanor offenses that Defendant falsely attributed to him. The records reported—relating to domestic violence, assault with a dangerous weapon, and other serious offenses—were entirely unrelated to Plaintiff and wrongfully associated with his name and identity.

25. Defendant published materially inaccurate and damaging information concerning Plaintiff by including criminal records in his consumer report that did not pertain to him in any respect. The inclusion of these unrelated and erroneous records—belonging to an entirely different individual—had no legitimate basis and should never have appeared in any consumer report concerning Plaintiff.

26. Specifically, it is indisputable that prior to furnishing the report about Plaintiff, Defendant failed to consult widely available public court records in Clay County and Kandiyohi County, Minnesota, which indicate that the aforementioned records do not belong to Plaintiff.

27. A cursory review of the widely available public court records confirms that the records belong to an unrelated individual named Anthony Remarrow Obanner ("Convicted Felon Obanner"). Defendant's unreasonable or non-existent procedures allowed Defendant to publish a report about Plaintiff wherein Defendant mixed the criminal history of Convicted Felon Obanner into that same report.

28. Had Defendant actually consulted or obtained the widely available public court records, it would have seen the obvious discrepancies between Plaintiff

13

and Convicted Felon Obanner.

29.    The discrepancies that should have caused Defendant to realize Plaintiff is not the same person as Convicted Felon Obanner include the following:

(a)    Plaintiff's legal name is "Thomas Orville Moore Jr." but the name of the individual subject of the criminal records is identified in the public court records as "Anthony Remarrow Obanner";

(b)    Plaintiff's date of birth, which was provided to Defendant prior to publishing the consumer report, is April 7, 1966, yet the public court records indicate that the Convicted Felon Obanner's date of birth is April 7, 1967;

(c)    Plaintiff has never lived in, worked in, or had any known association with the state of Minnesota—the jurisdiction where all six criminal cases attributed to Convicted Felon Obanner were filed; and

(d)    Plaintiff's Social Security number, which was provided to Defendant is contained on the face of the consumer report is entirely different than that of Convicted Felon Obanner's as confirmed by the public court records.

30.    The sole reason the inaccurate criminal records were reported as

14

belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's landlord. Specifically, Defendant's process evidently lacked any safeguard to verify that the subject of the reported criminal records shared Plaintiff's full legal name. Nor did Defendant's procedure even require a match between the full date of birth or Social Security number, despite having that information in its possession.

31.     Had Defendant followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal records belonged to Convicted Felon Obanner with an entirely different name, date of birth, address association, and Social Security Number than Plaintiff.

32.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Plaintiff's Application was Denied

33.     On or about May 27, 2025, Plaintiff was informed by his landlord that his application to purchase the trailer was denied solely because of the criminal records reported in the background check furnished by Defendant. The landlord made clear that the denial was a direct consequence of the serious felony and

misdemeanor convictions Defendant had wrongly attributed to Plaintiff.

34.    In addition to denying their application to purchase the trailer, the landlord informed Plaintiff that, due to the background check furnished by Defendant—which falsely portrayed Plaintiff as a convicted felon and misdemeanant—he would not be permitted to reside on the premises in any capacity. Although Plaintiff's fiancé, the primary applicant, passed the background screening, the landlord refused to allow Plaintiff to live there under any arrangement, effectively barring the couple from proceeding with the purchase or occupying the home.

35.    Shortly thereafter, Plaintiff obtained a copy of the consumer report that Defendant had furnished to his landlord and was both shocked and mortified upon discovering that it included multiple criminal records belonging to a different individual. Plaintiff experienced profound humiliation and disbelief as he realized that Defendant had falsely published another man's serious felony and misdemeanor offenses as if they were his own, in a report used to determine his housing eligibility.

36.    After losing the opportunity to purchase the home and reviewing the consumer report, Plaintiff contacted the Moorhead Police Department in an effort to clear his name. A representative from the department confirmed that Plaintiff did not appear anywhere in their system and that the individual named in the criminal cases—Anthony Remarrow Obanner—was a completely different person with no

shared name or other identifying connection to Plaintiff. This confirmation further underscored the egregious nature of Defendant's error and the absence of any reasonable basis for attributing Obanner's criminal history to Plaintiff.

37.    Plaintiff promptly contacted the landlord to explain that the criminal records contained in the background check were not his and had been reported in error. He made clear that he had never been arrested, charged with, or convicted of any of the grotesque and serious offenses listed, and that the report was plainly a case of mistaken identity. Despite Plaintiff's good-faith effort to clarify the situation, the landlord refused to engage further or consider any correction, and maintained that Plaintiff would not be permitted to purchase or reside in the home—treating him as if he were, in fact, the individual responsible for the crimes falsely attributed to him.

38.    Plaintiff was overwhelmed with panic, confusion, and deep concern upon learning that the criminal records of an entirely different individual had been falsely reported as his own. He feared not only the immediate consequences— such as the collapse of his planned move and fear of becoming displaced from his mother's home, which was at risk of repossession—but also the long-term damage such a severe misrepresentation could inflict on his reputation, financial stability, and future opportunities.

**Plaintiff Disputed the Misinformation in Defendant's Consumer Report**

39.    On or about June 9, 2025, driven by the urgent need to secure stable housing and deeply distressed over the far-reaching consequences of the false criminal records attributed to him, Plaintiff submitted a written dispute to Defendant. In that dispute, Plaintiff challenged the inaccurate reporting and demanded immediate correction, making clear that the records belonged to a different individual and had never been associated with him in any capacity.

40.    In his written dispute, Plaintiff specifically informed Defendant that he had contacted the Moorhead Police Department, which confirmed that his name did not appear in any of their criminal records. He further explained that the name associated with all of the case files in question belonged to an entirely different individual—Anthony Remarrow Obanner—and not to him.

41.    Shortly thereafter, Plaintiff received written confirmation from Defendant stating that it had conducted a reinvestigation in response to his dispute and had removed the criminal records belonging to Convicted Felon Obanner from his consumer report.

42.    Although Defendant ultimately removed Convicted Felon Obanner's criminal records from Plaintiff's background report, the correction came far too late to remedy the harm already inflicted. By the time the inaccurate information was removed, Plaintiff's landlord had permanently rescinded the offer to sell the trailer

and was no longer willing to communicate or reconsider. To make matters worse, the trailer was soon thereafter sold to another buyer, extinguishing any remaining chance for Plaintiff and his fiancé to recover the housing opportunity they had worked so hard to secure.

43.    The harm to Plaintiff's reputation, housing prospects, and sense of stability had already been inflicted, and the consequences were not undone by Defendant's belated correction.

44.    Plaintiff reasonably believes that Defendant's inaccurate reporting caused his landlord to form a deeply negative and prejudicial opinion of him, viewing him as a dangerous or untrustworthy individual based solely on the falsely attributed criminal records. This erroneous perception directly influenced the landlord's decision to deny the home sale and refuse to permit Plaintiff to reside at the property under any arrangement.

45.    As a direct result of Defendant's false and negligent reporting, Plaintiff lost the opportunity to purchase a home that perfectly aligned with his and his fiancé's needs—including affordability, safety, and convenient proximity to their places of employment. The home represented not just a practical living arrangement, but a long-term investment in their stability and well-being—an opportunity that was stripped from them without justification.

46.    As a consequence of Defendant's false reporting, both Plaintiff and his

fiancé now face significantly longer commutes—over 30 minutes each way through congested shore traffic—whereas the trailer they had planned to purchase was conveniently located near their places of employment. Plaintiff also urgently needs to purchase a truck for his new job, but is unable to do so given the financial uncertainty surrounding their future housing situation. The stability they had worked so hard to build has been upended, and their careful planning and efforts to establish a permanent home have been completely derailed.

47.     After being denied the opportunity to purchase the trailer at Sussex East MHC, Plaintiff and his fiancé struggled to find a suitable home within their budget, as properties in Lewes, Delaware were selling rapidly. The highly competitive housing market left them with few viable options, and they were forced to spend nearly all of their free time searching for an alternative. During this period, they felt lost, overwhelmed, and emotionally exhausted, as the dream of reclaiming the stability they had nearly secured continued to slip further from reach.

48.     Because they were unable to complete the purchase of the original trailer as planned, Plaintiff and his fiancé placed many of their packed belongings in their son's garage, fearing that the home of Plaintiff's deceased mother—where they were still residing—could be repossessed by the bank at any time due to the outstanding reverse mortgage. Uncertain of when they might be forced to leave, they lived in a constant state of anxiety, surrounded by boxes, with no assurance of

housing stability.

49.     They eventually located and purchased a different trailer, but it was significantly less desirable than the one they had originally pursued. The new home was less aesthetically appealing, located in a less ideal neighborhood, and farther from their places of employment. It also required substantially more financial investment to furnish and make livable. While it provided them with a roof over their heads, it came at the cost of comfort, convenience, and emotional satisfaction.

50.     Furthermore, the land lease for the original property Plaintiff intended to purchase was approximately $628 per month, whereas the less desirable property that Plaintiff and his fiancée ultimately acquired carries a monthly land lease of approximately $738. This $110 monthly increase represents a significant and ongoing financial burden, directly attributable to Defendant's false reporting. Over the course of a year, this disparity results in more than $1,300 in added housing costs—an amount that materially impacts Plaintiff's household budget and underscores the tangible economic harm caused by the misattribution of criminal records.

51.     As a result of Defendant's violations of the Fair Credit Reporting Act, Plaintiff has suffered a wide range of actual damages, including but not limited to: the loss of valuable housing opportunities; the expenditure of significant time, labor, and financial resources attempting to correct the inaccurate consumer report;

reputational harm; and severe emotional distress. Plaintiff's emotional suffering has manifested in persistent psychological symptoms such as anxiety, fear, humiliation, frustration, and mental anguish. These psychological injuries, in turn, gave rise to physical symptoms, including loss of sleep, nausea, loss of appetite, chronic fatigue, and general weakness—each of which has interfered with Plaintiff's daily functioning and diminished his quality of life. Plaintiff also experienced a profound loss of enjoyment of life and continued emotional and physical strain as a result of Defendant's reckless misreporting.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

52.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

53.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

54.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

55.    At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

56.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to

"follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

57.     As a result of Defendant's violations of the Fair Credit Reporting Act, Plaintiff has suffered a wide range of actual damages, including but not limited to: the loss of valuable housing opportunities; the expenditure of significant time, labor, and financial resources attempting to correct the inaccurate consumer report; reputational harm; and severe emotional distress. Plaintiff's emotional suffering has manifested in persistent psychological symptoms such as anxiety, fear, humiliation, frustration, and mental anguish. These psychological injuries, in turn, gave rise to physical symptoms, including insomnia, nausea, loss of appetite, chronic fatigue, and general weakness—each of which has interfered with Plaintiff's daily functioning and diminished his quality of life. Plaintiff also experienced a profound loss of enjoyment of life and continued emotional and physical strain as a result of Defendant's reckless misreporting.

58.     Defendant willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of the information it included in Plaintiff's consumer report. Specifically, Defendant either entirely failed to ascertain whether the full legal name, date of birth, Social Security number, or address history of the subject of the reported criminal records matched those of

Plaintiff—or recklessly disregarded clear mismatches between Plaintiff's identifiers and those of the actual offender, Anthony Remarrow Obanner. Publicly available court records reflected that Obanner had a different name, a different date of birth, and committed offenses in a jurisdiction with which Plaintiff had no known connection.

59.     Defendant's failure to implement or apply even the most basic identity-matching safeguards—such as requiring a full name or full date-of-birth match, or conducting a simple check of jurisdictional ties—demonstrates a willful disregard for the rights and safety of consumers under the FCRA. Accordingly, Defendant is liable for actual, statutory, and punitive damages under 15 U.S.C. § 1681n.

60.     In the alternative, Defendant's conduct was negligent in failing to implement or apply reasonable procedures to ensure the accuracy of the information it reported about Plaintiff, in violation of 15 U.S.C. § 1681e(b). Had Defendant exercised even minimal care—such as verifying a match between Plaintiff's full name, date of birth, Social Security number, or known address history and that of the individual whose criminal records were reported—it would have readily discovered that the records belonged to a different person. Accordingly, Defendant is liable to Plaintiff for all damages caused by its negligent noncompliance pursuant to 15 U.S.C. § 1681o.

61.     Plaintiff is entitled to recover statutory damages, punitive damages, and

reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: September 9, 2025

*/s/ Meir Rubinov*
Meir Rubinov, NY Bar # 6077887
**CONSUMER ATTORNEYS PLLC**
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 247-8020
E: mrubinov@consumerattorneys.com

*Attorneys for Plaintiff,*
*Thomas Orville Moore, Jr.*

25